**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————— :
                                       :
UNITED STATES OF AMERICA,              :
                                       :        Cr. No. 14-287 (FLW)
              Plaintiff,               :
                                       :           **OPINION**
       v.                              :
                                       :
MENDEL EPSTEIN, JAY                    :
GOLDSTEIN, DAVID ARYEH                 :
EPSTEIN, and                           :
BINYAMIN STIMLER,                      :
                                       :
              Defendants.              :
—————————————————— :

**<u>WOLFSON</u>**, **<u>United States District Judge</u>**:

This highly publicized criminal matter involved coercive gittin obtained from Jewish husbands in Orthodox Jewish divorce proceedings. After several weeks of trial, the jury has convicted defendants Rabbi Mendel Epstein, Rabbi Jay Goldstein and Rabbi Binyamin Stimler (collectively, "Defendants"), on one count of conspiracy to commit kidnapping, as well as one count of attempted kidnapping against Goldstein and Stimler.[1] Presently, each defendant moves for a judgment of acquittal, or alternatively, for a new trial. Each defendant also moved pursuant to Fed. R. Crim. P. 29, after the close of the Government's case-in-chief. Because I reserved decision on those trial motions, I will address them here. For the reasons expressed in this Opinion, Defendants' motions are **DENIED**.

---

[1]      Defendant David Epstein was acquitted of all charges by the jury. For the purposes of this motion, no references to David Epstein will be made.

## BACKGROUND AND PROCEDURAL HISTORY

Defendants are all Orthodox Jewish Rabbis, and their prosecutions arise out of charges that they engaged in criminal means to facilitate Orthodox Jewish divorces. A five-count Superseding Indictment was lodged against these defendants and a trial was held.

As a brief background, to effectuate an Orthodox Jewish divorce, a husband must provide his wife with a document known as a "get." This document serves as proof of the dissolution of a marriage under Jewish law, and a divorce cannot be accomplished until a get is given by the husband; indeed, whether to provide a get is solely within the discretion of the husband. According to Jewish customs, the process of providing a get is both specific and exacting. First, the get must be written by an expert scribe, known as a "sofer," who acts as the husband's agent. After the get is written by the sofer, the husband hands it to his wife in the presence of two witnesses, who also sign the get. A wife may have an agent accept on her behalf. Once the marriage is dissolved, a rabbinical court, known as a "beth din," will give both parties a certificate confirming their new marital status. If a husband refuses to give his wife a get, the wife may sue for divorce in a beth din, which may order the husband to issue the get. In the event that the husband does not comply, he may be subjected to various penalties pressuring him to consent.[2]

---

[2]    A woman whose husband will not give her a get is known as an "agunah" ("agunot" in plural), a chained woman who cannot remarry.

Count I of the Superseding Indictment charges all Defendants with conspiracy to commit kidnapping. The object of this conspiracy was to, *inter alia*, threaten and coerce Jewish husbands to give their wives a get, i.e., kidnappings. The remaining substantive Counts 3, 4 and 5 charge various defendants with two kidnappings and one attempted kidnapping; the conduct alleged in these substantive counts are also alleged in Count I as part of the overt acts in the conspiracy charge.[3]

Count 5 involved a "sting" operation in which two undercover Federal Bureau of Investigation ("FBI") agents posed as an agunah and her brother. Evidence and testimony during the trial revealed that Epstein charged the undercover agents approximately $60,000 to arrange for the kidnapping and potential beating of a fictitious husband in order to coerce that husband to give a get. The undercover agents engaged in numerous telephone calls, emails and in person meetings with Epstein and Goldstein, wherein the agents would discuss the proposed kidnapping. Eventually, a sting operation involving the proposed kidnapping took place at a warehouse in Edison, New Jersey. During this operation, Goldstein acted as the scribe, and Stimler served as a witness for the get. Both were arrested in the warehouse.

At the conclusion of the trial, the jury convicted each of the defendants with conspiracy to commit kidnapping, and convicted Goldstein and Stimler with

---

[3]    Specifically, Count 3 charges Mendel Epstein and Goldstein with a 2010 kidnapping; Count 4 charges Goldstein and Stimler with a 2011 kidnapping; and Count 5 charges Mendel Epstein, Goldstein, and Stimler with an attempted kidnapping in 2013.

attempted kidnapping in connection with the sting. Defendants were acquitted of substantive kidnappings charged in Count 3, and the Court dismissed Count 4 during trial.

Presently, Defendants move, separately, for a judgment of acquittal, or in the alternative, for a new trial. During trial, Defendants also moved for a judgment of acquittal at the close of the Government's case. Because the decisions of those motions were reserved by this Court, I will also decide them in this Opinion.

## DISCUSSION

## I.    Standard of Review

### A. Rule 29

Federal Rule of Criminal Procedure 29 provides that the district court, upon the motion of a defendant or upon its own motion, shall enter a judgment of acquittal if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In ruling on a Rule 29 motion, the district court must determine whether any rational trier of fact could have found proof of the defendant's guilt beyond a reasonable doubt based upon the available evidence presented at trial. *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002), (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In that connection, the Third Circuit has cautioned strongly that the district court "be ever vigilant in the context of . . . [a Rule 29 motion] not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006).

The Court must view the evidence in its entirety, and in the light most favorable to the Government. *United States v. Hoffecker*, 530 F.3d 137, 146 (3d Cir. 2008). The Government is also entitled to "the benefit of inferences that may be drawn from the evidence[,] and the evidence may be considered probative even if it is circumstantial." *United States v. Patrick*, 985 F. Supp. 543, 548 (E.D. Pa. 1997) (citing *United States v. Pecora*, 798 F.2d 614, 618 (3d Cir. 1986)); *see United States v. Griffith*, 17 F.3d 865, 872 (3d Cir. 1994). Hence, the movant bears a heavy burden establishing that the evidence presented by the Government during trial was insufficient to support a conviction. *See United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990); *United States v. Young*, 334 Fed. Appx. 477, 480 (3d Cir. 2009) (the movant "bears a heavy burden in light of our 'particularly deferential' standard of review in cases challenging the sufficiency of the evidence" (citations omitted)).

In fact, the Third Circuit has cautioned that acquittal should "be confined to cases where the prosecution failure is clear." *Smith*, 294 F.3d at 477; *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)). "The evidence need not unequivocally point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Pungitore*, 910 F.2d 1084, 1129 (3d Cir. 1990). "[T]he question is whether reasonable minds [could find] guilt beyond a reasonable doubt, not whether reasonable minds must [find] guilt beyond a reasonable doubt." *United States v. Ellisor*, 522 F.3d 1255, 1271 (11th Cir. 2008). The jury is free to draw between reasonable interpretations of the evidence

5

presented at trial. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). Accordingly, an acquittal should only be reserved in instances where "no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991); *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987).

Because the Court reserved its decision on each of Defendant's requests under Rule 29, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Civ. P. 29(b).

### B. Rule 33

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The authority to grant a new trial pursuant to Rule 33 is limited to those instances where the Court "believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (internal citations and quotation marks omitted); *United States v. Silveus*, 542 F.3d 993, 1004-1005 (3d Cir. 2008). Even in those cases where there is a possibility that the verdict is contrary to the weight of the evidence, "[m]otions for a new trial based on the weight of the evidence are not favored" and should be limited to "exceptional cases." *Silveus*, 542 F.3d at 1005 (quoting *Government of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)). Yet, if there is a reasonable possibility that a "trial

6

error had a substantial influence on the verdict," a new trial must be granted. *United States v. Mastro*, 570 F. Supp. 1388, 1390 (E.D. Pa. 1983); *Government of Virgin Islands v. Bedford*, 671 F.2d 758, 762, 19 V.I. 641 (3d Cir. 1982)).

I will consider each of the defendants' motions separately.

## II.   Rabbi Goldstein

Goldstein argues on his motion that "there is no evidence that [he] intended to commit kidnapping." Goldstein claims, rather, that the evidence only shows that he intended the fictitious husband involved in the FBI sting to be let go and not harmed. Therefore, Goldstein maintains that he should be acquitted because, at best, the evidence only shows a crime of assault or extortion, not kidnapping. Goldstein's argument, however, is contrary to the evidence presented at trial.

As delineated in its previous Opinion, this Court has explained that in order for the Government to secure a conviction of conspiracy to commit kidnapping, the following elements must be proven: (1) a shared unity of purpose; (2) an intent to achieve a common illegal goal of kidnapping; and (3) an agreement to work toward that goal. *See United States v. John-Baptiste*, 747 F.3d 186, 204-05 (3d Cir. 2014). With respect to the substantive crime of kidnapping, the Government must prove that (1) the defendant knowingly and willfully kidnapped, abducted, seized, or confined another person; (2) for ransom, reward, or other benefit; and (3) traveled in interstate commerce or willfully used an instrumentality of commerce. *See* 18 U.S.C. § 1201(a) *United States v. Brika*,

487 F.3d 450, 456 (6th Cir. 2007); *United States v. Dixon*, 592 F.2d 329, 340 (6th Cir. 1979).

Based on these legal precepts, the Court instructed the jury, more substantively, on the following elements of conspiracy to commit kidnapping:

> First: that two or more person agreed to: (a) seize or confine or inveigle or decoy or kidnap or abduct or carry away a person; and (b) hold the person for ransom or reward or other reason;
>
> Second: that the defendant was a party to or member of that agreement;
>
> Third: that the defendant knowingly and willfully joined the agreement or conspiracy to commit kidnapping, intending to join together with at least one other conspirator to achieve that objective; that is, the defendant and at least on other alleged conspirator shared a unity of purpose and the intent to achieve the common goal or objective of kidnapping; and
>
> Fourth: that at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objective of the agreement.

Jury Instructions, pp. 16-17.

Here, contrary to Goldstein's position, the Government had introduced ample evidence that an agreement to kidnap existed between the co-conspirators, including Goldstein. Indeed, the jury was presented with evidence of several kidnappings and an attempted kidnapping as overt acts. Evidence shows that in each of these acts of kidnapping, Goldstein played a substantial role in it; he was not only the scribe for the gittin, Goldstein also participated in planning these kidnappings. Indeed, there was overwhelming evidence from audio recordings, video recording, and the testimony of undercover FBI agents that Goldstein was involved in planning the attempted kidnapping for which he

was convicted.  For example, there was evidence from the FBI sting that Goldstein drove to Edison, New Jersey, from New York, to inspect the site where the attempted kidnapping ultimately occurred.

With respect to each of these kidnappings or attempted kidnapping, there was evidence that Goldstein agreed to, and in fact participated in, the seizing and confining of recalcitrant husbands for the purpose of coercing them to give a get.  Indeed, the jury weighed the evidence and found that Goldstein did not merely agree to extort or assault these victims, but rather, he had agreed to kidnap them.  Accordingly, I reject Goldstein's argument that he had no prior knowledge that kidnappings were taking place, and therefore, there is no basis for a judgment of acquittal on that ground.

I note that Goldstein moved pursuant to Rule 29 at the end of the Government's case, and Goldstein only presented one witness during his case-in-chief, Rabbi Naftali Stolman.  Rabbi Stolman essentially testified as to the kidnapping involving Bryskman, not to any facts involving the conspiracy or the FBI sting.  Therefore, that testimony does not impact the Government's evidence with regard to the conspiracy charge and the attempted kidnapping charge in Count 5.  Because I have found that the Government has presented sufficient evidence to permit a jury to find Goldstein guilty of those charges, I deny both Goldstein's Rule 29 motions made at the end of the Government's case-in-chief and the close of all the evidence.

Next, as a basis for a new trial, Goldstein insists, as he did during the Court's hearing on jury instructions, that because the victims were not held for

an appreciable period of time, the jury was not properly instructed on the elements of kidnapping. Goldstein relies on the Third Circuit's decision in *Government of the Virgin Island v. Berry*, 604 F.2d 221 (3d Cir. 1979) and the Supreme Court's decision in *Chatwin v. United States*, 326 U.S. 455 (1946), for the proposition that the Government must show that the victims were unlawfully restrained for an "appreciable" period of time in order for a kidnapping to have occurred. Because, as Goldstein argues, the evidence shows that the victim-husbands were only to be held for no longer than it would take to threaten them to agree to give a get, the jury instructions given in this context were erroneous. As I have before on the record, I reject this contention. *See* Trial Tr. dated 4/13/15, pp. 20-22.

For one, I start with the fact that the federal kidnapping statute does not contain any temporal language. *See* 18 U.S.C. § 1201. As to *Chatwin* and *Berry*, both cases dealt with differentiating defendant's conduct between a kidnapping and some other crime. *See Berry*, 604 F.2d at 226 (holding that momentary confinement during a robbery does not support a conviction for kidnapping). There is no such determination here; the Government charged Goldstein with the act of kidnapping or attempted kidnapping. And, the evidence is clear: that Goldstein agreed to participate in a scheme to restrain and confine the victim-husbands — by using ropes — for the purpose of coercing them to give a get. These acts of restraint and confinement certainly fall within the purview of the kidnapping statute.

In addition, as I indicated on the record, I have not been able to locate any case law or model jury instructions that have incorporated *Chatwin*'s "appreciable period of time" language in a kidnapping instruction.  *See, e.g.*, Fifth Circuit Model Instruction Chapter 2.58; Eighth Circuit Model Instruction Chapter 6.18.1201; Ninth Circuit Model Instruction Chapter 8.114; Tenth Circuit Model Instruction Chapter 2.55; and Eleventh Circuit Model Instruction Chapter 49.  To contrary, the Third Circuit has sustained jury instructions as to kidnapping without referencing any temporal language.  *See United States v. Sriyuth*, 98 F.3d 739, 751 n.20 (3d Cir. 1996).

Accordingly, I find that the jury instructions on kidnapping or attempted kidnapping were appropriate, and the inclusion of some type of temporal language serves little or no purpose in light of the facts of this case.

Finally, Goldstein submits that the Government constructively amended the Indictment or created a variance with the jury instruction relating to the object of the conspiracy.  According to Goldstein, the Superseding Indictment charged that the object of the conspiracy was for defendants to obtain money and other things of value from agunot and their families, by kidnapping the husbands of the agunot and violently coercing the husbands to give a get to their wives and thereby consent to Jewish divorces.  Therefore, Goldstein maintains that the object of obtaining money should have been included in the jury instructions, and the absence of it, impermissibly amends the Indictment.  I have, in detail, rejected this argument on the record, and as such, I need not

11

repeat those reasons here. *See* Tr. dated 4/13/15, pp. 27-29. I will, however, briefly discuss my reasoning.

The standard to constructively amend the indictment is quite high. A constructive amendment occurs when "in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." *United States v. Daraio*, 445 F.3d 253, 259-60 (3d Cir. 2006). Stated differently, "[a]n indictment is constructively amended when evidence, arguments, or the district court's jury instructions effectively amends the indictment by broadening the possible bases for conviction from that which appeared in the indictment." *United States v. McKee*, 506 F.3d 225, 229 (3d Cir. 2007) (internal quotation marks, alteration, and citation omitted). The court's inquiry is "whether the defendant was convicted of the same conduct for which he was indicted." *Daraio*, 445 F.3d at 260 (internal quotation marks omitted).

Here, no such constructive amendment occurred. In Count One, while the paragraph labeled "Object of the Conspiracy" alleges that defendants intended to obtain money, that paragraph also alleged that conspiracy was committed for "other things of value." Indeed, in the charging paragraph of the Superseding Indictment, it alleges that the purpose of the kidnapping was "to threaten and coerce Jewish husbands to give gets to their wives . . . ." Indictment, Count One, ¶ 2. A plain reading of the Indictment as a whole reveals that the Indictment not

only alleges obtaining money as an object of the conspiracy, but it also additionally charged that the object was to threaten and coerce Jewish husbands. *See United States v. Walton*, 430 Fed. Appx. 141, 150 (3d Cir. 2011)(finding that indictment must be read as whole when evaluating constructive amendments). Certainly, the jury could convict Defendants based one or both of these dual objects of conspiracy. To limit the jury instructions to one of the object is inappropriate. *See United States v. Miller*, 471 U.S. 130, 145 (1985).

More importantly, the federal kidnapping statute does not require that the purpose of the kidnapping is to obtain money, and neither does the kidnapping conspiracy statute. *See* 18 U.S.C § 1201(c). Rather, "ransom, reward or otherwise" is sufficient. *See* 18 U.S.C. § 1201(a). In that regard, any object of the kidnapping conspiracy, beyond the agreement to commit kidnapping is not an element of the offense. *See, e.g., United States v. Duka*, 671 F.3d 329, 352 (3d Cir. 2011). Accordingly, I find that adding the additional language regarding the object of obtaining money in the jury instructions is not necessary, and the absence of such language does not in any way constructively amend the Indictment.[4]

---

[4]     The jury instruction regarding the objective of the conspiracy also does not constitute a variance. A variance occurs "where the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Daraio*, 445 F.3d at 261 (internal quotation marks and brackets omitted). To demonstrate reversible error from a variance, a defendant "must show (1) that there was a variance between the indictment and the proof adduced at trial and (2) that the variance prejudiced some substantial right." *United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996). "A variance does not prejudice a defendant's substantial rights (1) if the

Goldstein's Rule 33 motion is likewise denied.

### III.  **Rabbi Epstein**

I note at the outset that Epstein was found guilty of only the conspiracy to commit kidnapping.  On his Rule 29 motion, Epstein argues that because the jury instructions on the conspiracy charge did not include a jurisdictional element, a reversal of his conviction is required.  I do not agree.  This argument was also presented to this Court at a hearing during trial, and I have provided my reasoning on the record as to why the conspiracy charge need not include language indicating that Defendants traveled across state lines, or used a means, facility or instrumentality of interstate commerce in committing the offense of kidnapping.

To reiterate, Epstein argues that he was charged under 18 U.S.C. § 1201, which criminalizes an agreement to violate subsection (a), or kidnapping as described by that subsection, with proof of commission of at least one overt act. Epstein correctly argues that the crime is simply not an agreement to violate some federal law, but specifically an agreement to commit a *federal* kidnapping as defined by the statute.  Indeed, the jury instructions were stated in such a way: "In order for you to find a particular defendant guilty of the conspiracy charged in Count 1 of the Indictment, you must find that the government proved

---

indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, [or] (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense." *United States v. Schoenhut*, 576 F.2d 1010, 1021-22 (3d Cir. 1978).  For substantially the same reasons why there is no constructive amendment, I find that Goldstein has not bear his burden of demonstrating a variance.

beyond a reasonable doubt . . . that the defendant knowingly and willfully joined the agreement or conspiracy to commit kidnapping . . . ." Jury Instructions, p. 16. But, in that regard, the jury instructions were very clear on the elements of federal kidnapping:

> that in committing or in furtherance of the commission of the offense [of kidnapping], either;
>
> a. the person identified as the victim was willfully transported in interstate commerce – that is, from one state to another; or
>
> b. a charged defendant traveled in interstate commerce; or
>
> c. a charged defendant used a means, facility or instrumentality of interstate or foreign commerce.

*Id.* at p. 24. Thus, when these jury instructions are read as a whole, they properly convey the jurisdictional requirement as to the conspiracy charge. *See United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995)(finding jury instructions must be read as a whole); *United States v. Munchak*, 527 Fed. Appx. 191, 194 (3d Cir. 2013); *United States v. Marino*, 562 F.2d 941, 945 (5th Cir. 1977)(finding that "the jury instructions, read as a whole, adequately charged the jury as to the definition, character, and nature of the acts" of the substantive crime underlying the conspiracy).

Furthermore, I find that there was certainly sufficient evidence of an interstate nexus as to the conspiracy. *See, e.g.*, Gov't Ex. 2400 (summarizing telephone records); Gov't Ex. 83A (interstate wire transfers); Gov't Ex. 22 (travel by defendants Epstein, Goldstein and Stimler from New York to New Jersey). Accordingly, I reject Epstein's argument in this context.

Next, Epstein also contends that the instruction on conspiracy resulted in a constructive amendment or variance with regard to the object of the conspiracy in the Indictment. I have already dealt with this argument, *supra*. Nothing Epstein raises on his motion requires me to comment any further.

Finally, Epstein reargues that this Court's refusal to allow him to present any evidence as to his religious belief or to suggest a justification defense constituted an error. Indeed, the parties have extensively briefed this issue during trial, which prompted this Court to issue a lengthy Opinion on Defendants' religious defense. *See United States v. Epstein*, 91 F. Supp. 3d 573 (D.N.J. 2015). Specifically, I rejected a defense based on the Religious Freedom Restoration Act. And, I commented that presenting evidence of religious beliefs in this case would run the risk of confusing and misleading the jury as to which law Defendants must adhere; and doing so, would carry a significant potential for jury nullification. I will rely on the reasoning set forth in my Opinion in rejecting, again, Epstein's arguments here.

Epstein makes no further argument as to the sufficiency of the evidence on his Rule 29 motion made post-trial, and thus, that motion is denied. Similarly, for the reasons explained above, Epstein's Rule 33 motion is denied.

I will briefly comment on Epstein's Rule 29 motion made at the end of the Government's case-in-chief. Epstein argues on that motion that the Government has not sufficiently proven that a conspiracy to commit kidnapping existed. I do not agree. Indeed, the jury was presented with evidence of various kidnappings and attempted kidnappings during the conspiracy time frame: the kidnapping

of Israel Markowitz in 2009; the kidnapping of Israel Bryskman in 2010; the kidnapping of Usher Chaimowitz and Menachem Teitelbaum in 2011; the attempted kidnappings of Aaron Friedman; and the attempted kidnapping involved in the FBI sting in 2013. Each of these purported kidnappings or attempted kidnappings was charged as an overt act of the conspiracy. In each of these acts, there was sufficient evidence of a criminal agreement and involvement by Epstein. For example, there was substantial testimony from various witnesses, including undercover agents, of Epstein's involvement in the various kidnappings, particularly the FBI sting. In fact, Epstein can be heard on various audio recordings describing in detail the particular steps that he and his conspirators took to procure a get from a recalcitrant husband. In sum, I find that there was sufficient evidence introduced by the Government for a jury to find Epstein guilty beyond a reasonable doubt, of conspiring to commit kidnappings. Accordingly, I deny Epstein's Rule 29 motion made after the close of the Government's case.

## IV.   **Rabbi Stimler**

On his Rule 29 motion, Stimler first argues that overwhelming evidence shows that because he had the distinctive qualifications required by Jewish law to be a witness, or an Eid, on a get, his convictions on the conspiracy and attempted kidnapping charges should be reversed. Stimler reasons that because freeing an agunah is a mitzvah under Jewish law, his participation as a witness to a get is proof that he was only motivated by a desire to fulfill that mitzvah.

At the outset, I note that to the extent Stimler asserts the defense of religious justification, I have already rejected that and other related arguments in my previous Opinion. *See Epstein*, 91 F. Supp. 3d at 587-89. I will not revisit those issues here. While Stimler, on his case-in-chief, introduced fact witnesses that generally testified as to Stimler's role as a witness to other gittin that did not involve the illegal act of kidnapping, and those same witnesses testified that Stimler participated in those gittin because it was a good deed to do so, the jury was certainly entitled to weigh the evidence in determining Stimler's intent and knowledge. Indeed, there was substantial testimony from witnesses regarding Stimler's involvement in the kidnappings and the attempted kidnapping underlying the conspiracy. As to the Chaimowitz and Teitlebaum kidnappings, Rabbi Aryeh Ralbag testified that Stimler appeared before him and admitted his role in that kidnapping, and not merely the fact that he was a witness to the get, but that Stimler knew that the victims were bound. *See* Trial Transcript, dated 3/9/15, p. 90-91. Perhaps, most importantly, no other evidence demonstrates Stimler's culpability more than his involvement in the FBI sting. Evidence shows, *inter alia*, that Stimler was at the warehouse where the proposed kidnapping was taking place, wearing a hoodie and a balaclava to hide his identity. *See Id.*, dated 2/25/15, p. 129. Moreover, video surveillance appears to show that Stimler scouted the parking lot of the warehouse for police or other activity. Taken together, the sum of the Government's evidence tended to establish that Stimler knew that he was involved in illegal kidnapping schemes

and that he intended to carry out those schemes with his co-conspirators.[5]  The jury was entitled to weigh such evidence from the Government and from Stimler on the issue of intent.[6]

Next, Stimler presents several factual assertions that are not appropriate for this Court to weigh on a Rule 29 motion.  *See United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002)("when deciding whether a jury verdict rests on legally sufficient evidence it is not for us to weigh the evidence or to determine the credibility of the witnesses. Rather, [the court] must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (citations and internal quotation omitted)).  For example, Stimler argues that he is innocent because he was not involved in any of the conversations preparatory to the sting and his role as a witness was distinguished from the roles of the muscle men; that his conduct during the sting was consistent with innocence; that he was not present when the violence occurred during the Chaimowitz kidnapping; and that there is no evidence that he was involved in any way in the 2009 "forced" get.

_____

[5]    For the same reasons, I deny Stimler's Rule 29 motion made at the close of the Government's case.

[6]    Relatedly, Stimler argues that because there was testimony that he has a non-violent reputation, evidence shows that he would have never agreed to commit kidnappings.  Again, the jury was entitled to credit or discredit any testimony regarding Stimler's character.  This is certainly is not a proper evidentiary basis for granting a Rule 29 motion.

None of these assertions are appropriate on this motion. Simply, these are all factual defenses that Stimler has argued to the jury, and the jury has considered — and rejected — Stimler's evidence when the jury convicted Stimler of conspiracy to commit kidnapping and attempted kidnapping. I stress that Stimler was not convicted of any substantive kidnapping charges, except for the attempted kidnapping associated with the FBI sting. And, that attempted kidnapping was also an overt act of the conspiracy charge. Therefore, even if there was no evidence that Stimler was involved in the Chaimowitz kidnapping or in the 2009 "forced" get as he suggests — which is not what the evidence revealed — the jury could still convict Stimler of conspiracy because it found him guilty of attempted kidnapping.

Accordingly, Stimler's Rule 29 motions are denied.

On his Rule 33 motion, Stimler argues that he should be granted a new trial because the jury did not know that he had volunteered to tell his version of events to the prosecutors, and that he would take the stand in a new trial to testify as to that fact. This fact, Stimler submits, would enable a new jury to consider his willingness to speak to the prosecutor after his arrest as evidence of his innocence. Based on that argument, it appears Stimler seeks to introduce new evidence in the form of his live testimony should a new trial be held. I reject this argument summarily. Where a Rule 33 motion is based on newly-discovered evidence, the movant shoulders a "heavy burden," *see United States v. Brown*, 595 F.3d 498, 511 (3d Cir. 2010), of proving five elements: "(a) [T]he evidence must be in fact newly discovered, i.e.[,] discovered since trial; (b) facts must be

alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal," *United States v. Schneider,* 801 F.3d 186, 201-02 (3d Cir. 2015).

Here, Stimler's own testimony as evidence does not meet any of these factors because, most importantly, his version of the events cannot qualify as "newly discovered" information. Indeed, Stimler has not argued that his testimony would reveal any newly discovered evidence since trial that would likely exonerate him of his convictions. Instead, Stimler merely requests a second chance to testify — having already exercised his Fifth Amendment right not to take the stand at trial — which is not a proper basis for a new trial under Rule 33.

Stimler further argues that a new trial is appropriate because the Court erroneously answered one of the jury's question during deliberations. That question was posed by the jury as follows:

> We need clarification on the kidnapping charge. If you know that someone is being confined against their will and they do not intervene, does that fulfill element #1 of kidnapping.

Jury Question, #3.

After in-chambers discussion and over the objection of Stimler's counsel, the Court answered the question as follows:

> I have interpreted your question as to referring to the kidnapping counts 2 and 3. If that is accurate, then the answer to your question is no. If, however, you are inquiring about any other count, please

so indicate, so that I may more fully consider your question and answer appropriately.

Stimler argues that the Court should have simply answered "no," because the response provided by the Court erroneously implied to the jury that a defendant could be found guilty of conspiracy to kidnap and attempted kidnapping if one did not "intervene" to prevent a kidnapping. I do not find such an implication can be gleaned from the Court's response. Indeed, the jury specifically framed its question as to the kidnapping charges only. And, in that respect, the response was directed only to those counts. In fact, the second-half of the response — that the jury should indicate whether it had the same question regarding Counts 1 and 5 — alleviates Stimler's concern regarding whether the jury would make any improper inferences. Despite the Court's invitation, however, the jury did not ask any further questions as to this issue. Thus, I reject Stimler's argument in this context.

Lastly, as a matter of fundamental fairness and public policy, Stimler argues that the manner in which the FBI concocted and carried out its sting was so outrageous that this Court should reverse Stimler's convictions based on that government conduct. It appears Stimler moves pursuant to Fed R. Crim. P. 12(b). Based on that Rule, any alleged defect in the institution of the prosecution itself, such as the sting, must be raised prior to trial, and the failure to do so amounts to a waiver. *See United States v. Tolentino*, 486 Fed. Appx. 286, 288 (3d Cir. 2012)(finding that a defendant waives his defense of outrageous government conduct by failure to raise that defense prior to trial); Fed. R. Crim. P. 12(b)(3)(A).

Here, there is no dispute that Stimler did not raise this defense before trial or any time during trial.  While Stimler argues that the full extent of the sting was not known to him, I find that Stimler, nevertheless, has waived his right to raise this defense.  For one, as the Government has represented, the particulars of FBI operation was available to Stimler before the trial as they were included in discovery.  Indeed, the FBI recordings, the emails, and written contacts, which were available to Stimler prior to trial, described the undercover agents' conversations with Epstein, as well as with the ORA and the Beth Din of America. Certainly, Stimler was on notice of the nature of the FBI's undercover operation as it related to the attempted kidnapping charge.  In that regard, Stimler should have raised this defense prior to trial, and doing so now is not timely.[7]

Hence, Stimler's Rule 33 motion is likewise denied.

---

[7]    Even if I were to reach the merits of Stimler's argument as to the FBI's sting, I do not find that the manner in which the FBI conducted its sting constitutes outrageous government conduct.  To qualify as such, the conduct must be "shocking, outrageous, and clearly intolerable," so as to "violate our sense of fundamental fairness or shock the universal sense of justice." *United States v. Pitts*, 193 F.3d 751, 761-62 (3d Cir. 1999) (citation omitted). Having presided over the trial and having heard testimony regarding the tactics used by the FBI during the sting, nothing the FBI employed would suggest to me that its conduct has shocked the universal sense of justice.

**CONCLUSION**

For the foregoing reasons, Defendants' motions for a judgment of acquittal, or in the alternative, for a new trial are **DENIED** in their entirety.

An appropriate Order shall follow.


DATED: 12/11/2015                        /s/        Freda L. Wolfson
                                         **Freda L. Wolfson**
                                         **United States District Judge**

24